IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ANONYMOUS MEDIA RESEARCH HOLDINGS, LLC, <br><br> Plaintiff <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants | Civil Action No. 2:23-cv-00439-JRG-RSP <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF ANONYMOUS MEDIA RESEARCH HOLDINGS, LLC'S MOTIONS *IN LIMINE***

Plaintiff Anonymous Media Research Holdings, LLC ("Anonymous") moves the Court *in limine* to preclude to Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., (collectively, "Defendants" or "Samsung"), their attorneys and witnesses from mentioning or referring to, in the presence of the jury, either directly or indirectly, during *voir dire*, opening statement, questioning of witnesses, argument, objections before the jury, or by any other means or manner any of the matters set forth below, unless and until such matters have been first called to the Court's attention—out of the presence of the jury—and a favorable ruling received as to the admissibility of those matters.

AMRH maintains that the following matters are inadmissible, irrelevant, and prejudicial to its right to a fair and impartial trial. The introduction of any of the following evidence, testimony, or argument would constitute harm to AMRH and will deprive AMRH of a fair and impartial trial. Therefore, in an effort to avoid prejudice and a possible mistrial, AMRH moves in limine to exclude the following:

**1.    Any argument, evidence, or testimony that the value of the Asserted Claims or the Asserted Patents is limited to particular amendments made to overcome rejections in the prosecution history, particular elements not found in the prior art, or anything less than the claimed invention as a whole.**

Samsung has indicated that it intends to suggest that damages in this case should be limited to the benefit of particular claim language it contends was added in response to an office action rejection in the prosecution history. For example, outside the context of the elected prior art references disclosed in Samsung's invalidity contentions, Samsung's technical expert Dr. Bederson has gone through an element-by-element comparison of a claim rejected in the prosecution history on Section 103 grounds to the final allowed claim:

| Amended Claim 1, Amendment and RCE (February 6, 2012), (AMRH_SAMSUNG_00000817) | New Claim 9, Amendment (April 1, 2013), (AMRH_SAMSUNG_00000873) |
|---|---|
| 1. A media measurement method comprising: generating a raw play stream including a sequence of content identification results corresponding to a sequence of a plurality of audio data samples captured at a media monitoring device, wherein generating the raw play stream comprises (i) receiving the plurality of audio data samples at one or more computers; (ii) with respect to an electronic database including a plurality of audio data representations, each of the plurality of audio data representations being associated with a content identifier, using one or more computers to query the electronic database to obtain a sequence of content identification results by searching the electronic database to obtain respective likely matches between respective audio data samples of the plurality of audio data samples and respective audio data representations of the plurality of audio data representations, the respective audio data representations corresponding to respective content identifiers; and (iii) using the respective content identifiers to generate the sequence of content identification results in the raw play stream; and scrubbing the raw play stream by analyzing sample sequence data including the sequence of content identification results, wherein analyzing includes: | 9. A media measurement method comprising: (a) receiving over a network, at one or more computers, data for a sequence of audio data samples, the audio data samples comprising representations of audio data captured at a media monitoring device, the plurality of audio data samples being submitted over the network; (b) using the one or more computers to query an electronic database of a plurality of audio data representations and corresponding content identifiers; (c) generating a raw play stream, the raw play stream comprising a sequence of content identification results corresponding to the sequence of audio data samples; wherein: the sequence of content identification results is obtained by querying the electronic database to attempt to determine respective likely matches between respective audio data samples in the sequence of audio data samples and respective audio data representations in the electronic database; a content identification result of the sequence of content identification results comprises either: (i) a content identifier associated in the electronic database with a respective audio data representation that is determined to be a respective likely match with a respective one of the audio data samples; or (ii) an indication |

| Amended Claim 1, Amendment and RCE (February 6, 2012), (AMRH_SAMSUNG_00000817) | New Claim 9, Amendment (April 1, 2013), (AMRH_SAMSUNG_00000873) |
|---|---|
| determining at least certain results to be correct in view of their sequence relative to other results in the sequence of content identification results; and determining other results, if any, to be incorrect in view of their sequence relative to other results in the sequence of content identification results. | of the absence of a respective likely match between a respective audio data sample and an audio data representation in the electronic database; and the raw play stream includes either: at least two different content identifiers obtained from the electronic database; or at least one content identifier obtained from the electronic database and at least one indication of the absence of a respective likely match between a respective audio data sample and an audio data representation in the electronic database; (d) scrubbing the raw play stream by analyzing sample sequence data of the raw play stream to determine whether to change a result of the sequence of content identification results in view of a pattern of the sample sequence data of the raw play stream compared to an expected pattern of sample sequence data; and (e) generating a clean play stream from the raw play stream by making any changes to the raw play stream that are determined to be made by the scrubbing. |

Ex. 5 at ¶ 160; Ex. 6 ¶ 95. Mr. Kidder, Samsung's damages expert, then uses this analysis to suggest that the value of AMRH's patented inventions are limited only to "incremental improvement" over prior art. *E.g.*, Ex. 7 ¶¶ 178; 183–192. This is an improper damages analysis.

"It is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages." *AstraZeneca AB v. Apotex*

*Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015). Rather, when patented inventions rely, at least in part, on a new combination of conventional elements the question is "how much new value is created by the novel combination"—the conventional elements are not removed from the overall value of the patented combination. *Id.* at 1339 n.5.[1]

Instead, determining the appropriate value to assign to the patented invention (as a whole) is done through a *Georgia-Pacific* analysis, which both sides' experts completed. *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*, 561 Fed. App'x 934, 949–51. In *Varian*, the defendant—like Samsung here—took the position that when a claim "is directed to an improvement, but also claims other conventional elements," damages must be limited to the improvement alone. *Id.* at 949. "That argument goes too far." *Id.* at 950. When it comes to "limiting damages to the value of the improvement in an invention which includes conventional elements," that is what the *Georgia-Pacific* factors are designed to do. *Id.* at 950–51. Any suggestion by Samsung that the inventiveness of a particular claim element over prior art from an office action rejection bears on the value "of the patented invention as a whole," is improper. *AstraZeneca*, 782 F.3d at 1339.

While normally this type of evidence might be introduced in the context of an invalidity case, the prosecution history rejections relied on by Samsung's experts are not based on prior art that is in Samsung's invalidity contentions. Allowing Samsung to go down this path will introduce juror confusion on the question of invalidity, which should be limited to Samsung's appropriately disclosed invalidity theories. P.R. 3-3; FED. R. EVID. 403. These tangents on why certain elements were added and detailed foray into the amendments in the prosecution history will inevitably

---

[1] This makes sense. Some inventions consist entirely of a new combination of conventional elements. If Samsung's proposed approach were followed, "removing the value of all of those [conventional] elements would mean that nothing would remain." *Id.*

devolve into claim scope arguments about what is or is not covered by the language Samsung contends was added to overcome a rejection,[2] and what elements in the office-action-rejected claims were or were not conventional; this will only waste time and confuse the jury as to the proper determination of damages for Samsung's "use of the patented invention as a whole." *AstraZeneca*, 782 F.3d at 1339. The motion *in limine* should be granted.

**2.     Any argument, evidence, testimony, reference, or suggestion concerning patents unrelated to the asserted patents in this case, including the patent AMRH's Expert (Leo Hoarty) sold to Vizio and Samsung's patents.**

Samsung should be precluded from referencing, introducing, or eliciting testimony about patents unrelated to the asserted patents, including Mr. Leo Hoarty's patents and Samsung's own patents. Arguments and evidence concerning unrelated patents risk "inject[ing] frolics and detours" that would require "counter-evidence," thus "creat[ing] side issues" that "unduly distract[] the jury from the main issues." *See Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1572–73 (Fed. Cir. 1986) (affirming trial court's exclusion of evidence of unrelated patents and applications from trial under Rule 403). This case is about AMRH's patented technology, not the patents of an expert witness hired by the plaintiff or those invented by Samsung.

First, Mr. Hoarty is AMRH's invalidity and ACR industry expert. His reports detail his work history in the industry, including work on behalf of Vizio, Inc. and patents in the general field of ACR that related to that work. One such patent invented by Mr. Hoarty was sold to Vizio, Inc. in 2015. That project and patent has nothing to do with this litigation. But during Mr. Hoarty's deposition, counsel for Samsung probed into Mr. Hoarty's patent and, specifically, sought

---

[2] If Samsung had wished to make a prosecution history disclaimer argument based on particular amendments to overcome prior art, the time to do that was during *Markman* proceedings. *See, e.g.*, *Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*, No. 22-cv-469, 2024 WL 5098226, at *2 (E.D. Tex. Dec. 12, 2024) ("Samsung could have and should have raised [this] claim construction argument during the claim construction phase but … chose not to.").

disclosure of the financial consideration that Vizio paid to own Mr. Hoarty's unrelated patent, whether Vizio practiced it, and whether Mr. Hoarty knows whether Vizio uses AMRH's patents. *See* Ex. 1 (Hoarty Dep. Tr.) at 19:9–22:18. Whether Vizio infringes the Patents-in-Suit has no connection to whether Samsung infringes the Patents-in-Suit. Nor is Mr. Hoarty's patent a prior art reference in this case— it is not even prior art to begin with. And the amount Vizio paid Mr. Hoarty in 2015 to acquire one unrelated patent is not a data point that either damages expert relies upon in this case. In short, none of this is relevant and it should be inadmissible under Rule 402.[3]

Any theoretical relevance of Mr. Hoarty's patent (and there is none) is far outweighed by the risks of undue prejudice and juror confusion. FED. R. EVID. 403. It would prejudice AMRH by forcing it to defend against arguments and evidence about a completely irrelevant patent. If Samsung were permitted to introduce that Mr. Hoarty sold an ACR patent to Vizio for a particular dollar, this might suggest to the jury that this amount is comparable economic data point to consider for assessing a reasonable royalty. Of course, it is not, and no expert or witness has even analyzed that transaction or patent to make such an assessment to begin with. A frolic into Mr. Hoarty's patent sale to Vizio, and whether Vizio used that unrelated patent, will waste time and confuse the jury as to the proper determination for infringement and damages.

Second, as for Samsung's own patents, they have no possible relevance to this case. *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("[T]he existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell.") (internal citation and quotations omitted). *See also KAIST IP US LLC v.*

---

[3] Practically, any reference beyond the general statement that Mr. Hoarty is an inventor on patents in the ACR-industry, which goes to his qualifications and expertise, is beyond the scope of this litigation.

*Samsung Elecs. Co., Ltd.*, No. 2:16-cv-01314-JRG, Dkt. 416 at 2 (E.D. Tex. May 2, 2018) (precluding arguments that "the Accused Instrumentalities practice other patents"). No expert offers an opinion that relate to Samsung patents in any way. And Samsung has not disclosed any particular patents that in any way relate to the claims and defenses at issue in this case. Thus, Samsung should be precluded from referencing its own patents. Evidence, argument, or other testimony concerning Samsung's patents will confuse the jury and prejudice AMRH.

**3.     Any argument, evidence, testimony (including expert testimony), or reference to Plaintiff's "waiting to file" or "finally filing" the Video Patents in 2019, or other similarly derogatory or pejorative commentary or testimony on the timing of the filing of the Video Patents.**

AMRH filed applications for U.S. Patent Nos. 8,510,768, 8,756,622, and 8,677,389 (collectively, the "Audio Patents") in 2008.[4] Later in prosecution, AMRH filed applications for U.S. Patent Nos. 10,719,848, 10,719,849, and 10,963,911 (collectively, the "Video Patents") in 2019. Any derogatory or pejorative reference to the year in which Plaintiff filed the Video Patents, has no legitimate bearing on any claim or defense that the jury must decide. The timing of the filing of the Video Patents in 2019 is wholly unrelated to Defendants' invalidity arguments—to avoid an adverse finding on summary judgment, Samsung conceded the Video Patents share a priority date of May 27, 2004; for the same reason, Samsung withdrew its prosecution laches defense. As such, any negative suggestion on the timing of the filing of the patent applications is irrelevant. *See Magnivision Inc. v. Bonneau Co.*, 115 F.3d 956, 961 (Fed. Cir. 1997) ("As provided in Rules 401–403, admissible evidence must be relevant in that it must tend to make a consequential fact more or less probable.").

---

[4] The Audio Patents are no longer asserted against Samsung.

██████████████████████████████████

The only reason to introduce such evidence or testimony would be to imply some form of wrongdoing or delay by Plaintiff in obtaining its patents. The is the stereotypical "skunk in the box" that Rule 403 is designed to preclude. *See Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1368 (Fed. Cir. 2017) (a district court "may exclude relevant evidence if its probative value is substantially out-weighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). There is no requirement that a patentee file all related patent applications simultaneously or disclose all potential inventions in a single patent. On the contrary, it is well-established that an inventor may pursue protection for different aspects of an invention through separate applications filed at different times. *See* 35 U.S.C. § 120. Explaining the complex history of prosecution, why some applications were filed earlier than others, and the detailed minutiae of practice before the Patent Office during prosecution would waste the jury's time on issues it will not be asked to decide. None of this has any tendency to prove any material fact in dispute; it would only confuse the jury, poison the jury's view of the inventors, and distract from the actual claims and defenses at issue. *See Magnivision Inc. v. Bonneau Co.*, 115 F.3d 956, 961 (Fed. Cir. 1997) ("there was no consequential fact to be proved by evidence of 'prosecution irregularities,' and the proffered evidence thereof was irrelevant.").

**4.    Any argument, evidence, testimony (including expert testimony), or reference to patent interference proceedings, or applications held open for the purpose of pursuing patent inference proceedings, in the prosecution history of the patent families of the Asserted Patents.**

During prosecution of related applications in the same patent family, Plaintiff and its principals discussed and considered filing certain interference proceedings before the U.S. Patent and Trademark Office under the pre-AIA system. Specifically, Plaintiff considered filing interference proceedings to contest U.S. Patent No. 7,623,823 (the "Zito Patent"). However, no

formal interference proceeding was ultimately initiated. Unrelated interference proceedings, or the abandonment of interference proceedings—none of which relate to Samsung or any of its asserted prior art—should not be presented to the jury as it does not affect the validity or enforceability of the asserted patent claims. Any reference to these proceedings is irrelevant and would be confusing and a waste of time, and should be barred before trial. *See Magnivision Inc.*, 115 F.3d at 961 ("As provided in Rules 401-403, admissible evidence must be relevant in that it must tend to make a consequential fact more or less probable.").

Moreover, any mention of interference proceedings poses a substantial risk of unfair prejudice, confusion, and misleading the jury. *See* FED. R. EVID. 403. Such references could (i) invite improper speculation regarding the reasons for not pursuing an interference, including unfounded inferences about the strength or weakness of AMRH's patents; (ii) distract the jury from the actual issues of patent validity and infringement, which are to be decided based on the evidence and the law, not on hypothetical or abandoned legal strategies with respect to unrelated patents; and (iii) create the false impression that AMRH's patents are less valid or enforceable because an interference was not pursued against the Zito Patent, when in fact no such legal determination was ever made. The interference in question would have been a procedural, first-to-invent priority contest regarding certain claims in a related application. It did not determine patent validity, enforceability, or infringement. Indeed, the interference was never adjudicated on the merits at all because Plaintiff chose not to pursue it. No finding emerged from that interference that could possibly inform the jury's decision on infringement or any invalidity defense.

An unconsummated priority dispute does not negate the Asserted Patents' presumption of validity, nor does it provide any competent evidence of invalidity. As the Federal Circuit has explained, "the probative value of unfinished agency proceedings [is] substantially outweighed by

the risk of unfair prejudice to the patentee and the potential for misleading the jury, thereby justifying exclusion under Federal Rule of Evidence 403." *SSL Servs., LLC v. Citrix Sys.*, 769 F.3d 1073, 1093 (Fed. Cir. 2014). Here, no proceeding was litigated to a final decision, so it has no probative value regarding the validity or merit of Plaintiff's patents. It is no more relevant than a withdrawn patent application or an unpursued claim.

**5.    Any argument, evidence, testimony, reference, or suggestion that AMRH's inventors are unable to identify differences between the Asserted Patents and particular prior art references.**

After Samsung provided its 30(b)(6) Notice of Deposition, which broadly defined "Prior Art" to include, but not be limited to, the hundreds of references (and tens of thousands of combinations) in its invalidity contentions, Ex. 2 at 3, AMRH properly served its objections and responses, including objections to topics using this overly broad definition of Prior Art. Ex. 3.

Pursuant to the Rules, while it maintained its objection to the breadth of this definition, AMRH still agreed to provide Mr. Otto as a representative to provide general testimony relating to awareness of Prior Art (Topic 3), investigation of Prior Art before filing suit (Topic 7), and knowledge and identity of Prior Art (Topic 8). *Id.* AMRH objected to Topic 11, which purported to require AMRH to prepare a witness on the differences between hundreds of Prior Art references (or more) and the claimed inventions. *Id.* Samsung did not respond or otherwise seek to confer on AMRH's objections—including Topic 11—before conducting Mr. Otto's 30(b)(6) deposition. Nevertheless, Samsung asked questions about minute details excerpted out of thousands of pages of prosecution history dating back to 2004 (covering all the Asserted Patents as well as many other family applications) and complained when Mr. Otto, could not recall the specific details offhand.

Federal Rule of Civil Procedure 30(b)(6) requires that a corporate designee "must testify about information known or *reasonably* available to the organization." Fed. R. Civ. P. 30(b)(6)

(emphasis added). The Fifth Circuit has made clear that the "deponent must prepare the designee to the extent matters are *reasonably available*, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). This does not include requiring a designee to memorize the minute details of thousands of pages of prosecution history and a defendant's hundreds of claimed prior art references. Rather, it was Samsung's duty to draft topics that described "with reasonable particularity the matters for examination," such as a specific set of prior art references or a specific sub-set of the thousands of pages of prosecution history. *Function Media, L.L.C. v. Google, Inc.*, No. 2:07-CV-279-CE, 2010 WL 276093, at *1 (E.D. Tex. Jan. 15, 2010) (quoting Fed. R. Civ. P. 30(b)(6)). Samsung failed to do so.

As AMRH explained to Samsung, Mr. Otto's testimony about events occurring during prosecution was consistent with the scope of AMRH's knowledge and the knowledge available to AMRH, and Mr. Otto was not designated on differences between the Asserted Patents and Prior Art. Ex. 4 at 2. Samsung's failure to provide more particularized topics or object to AMRH's responses before taking Mr. Otto's deposition should not be used against AMRH. The only purpose of claiming that Mr. Otto or Mr. Steuer cannot identify differences between the Asserted Patents and Prior Art, or eliciting testimony along those lines, would be to create the misimpression that no such differences exist. This misimpression would be extremely and unfairly prejudicial to AMRH and confuse the jury as to minimal importance of the hundreds of purported prior art references about which Samsung sought to interrogate Mr. Otto.[5] As such, pursuant to Rule 403, AMRH respectfully requests that the Court grant this motion *in limine*.

---

[5] This is all the more true because AMRH has not designated either of its inventors as experts on the scope of Samsung's asserted prior art.

███████████████████████████

| | |
|---|---|
| Dated: July 28, 2025 | Respectfully submitted, |

                                                */s/ Jason McManis*
Jason McManis
State Bar No.: 24088032
Weining Bai
State Bar No.: 24101477
Sujeeth Rajavolu
State Bar No.: 24127961
Louis Liao
State Bar No.: 24109471
Hailey Pulman
State Bar No.: 24121469
Chun Deng
State Bar No.: 24133178
Ab Henry
State Bar No.: 24131987
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
jmcmanis@azalaw.com
wbai@azalaw.com
srajavolu@azalaw.com
lliao@azalaw.com
hpulman@azalaw.com
cdeng@azalaw.com
ahenry@azalaw.com

Warren J. McCarty III
State Bar No.: 24107857
**The McCarty Firm, P.C.**
100 Crescent Ct., Floor 7
Dallas, TX 75201
Phone: (214) 459-3196
wmccarty@mccartyfirm.com

*Of Counsel:*

Andrea L. Fair
Texas Bar No. 24078488
andrea@ millerfairhenry.com
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Tel: 903-757-6400
Fax: 903-757-2323

**COUNSEL FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed electronically on July 28, 2025. As such, this document was served on all counsel of record pursuant to the Federal Rules of Civil Procedure.

*/s/ Jason McManis*
Jason McManis

### CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that I conferred with opposing counsel regarding the above-mentioned Motions in Limine on July 28, 2025. Samsung's counsel stated that Samsung opposes these Motions at this time but may reconsider its positions at a later date.

*/s/ Jason McManis*
Jason McManis

### CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that under Local Rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter

*/s/ Jason McManis*
Jason McManis