███████████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ANONYMOUS MEDIA RESEARCH HOLDINGS, LLC, | § § § § § | |
| Plaintiff | § § | |
| v. | § | Civil Action No. 2:23-cv-00439 |
| SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC., | § § § § | JURY TRIAL DEMANDED |
| Defendants | § § § | |

**DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.'S RESPONSE TO AMRH'S MOTIONS *IN LIMINE***

████████████████

## TABLE OF CONTENTS

**Page**

I.    AMRH'S MOTION IN LIMINE NO. 1: ANY ARGUMENT, EVIDENCE, OR TESTIMONY THAT THE VALUE OF THE ASSERTED CLAIMS OR THE ASSERTED PATENTS IS LIMITED TO PARTICULAR AMENDMENTS MADE TO OVERCOME REJECTIONS IN THE PROSECUTION HISTORY, PARTICULAR ELEMENTS NOT FOUND IN THE PRIOR ART, OR ANYTHING LESS THAN THE CLAIMED INVENTION AS A WHOLE.................... 1

II.   AMRH'S MOTION IN LIMINE NO. 2: ANY ARGUMENT, EVIDENCE, TESTIMONY, REFERENCE, OR SUGGESTION CONCERNING PATENTS UNRELATED TO THE ASSERTED PATENTS IN THIS CASE, INCLUDING THE PATENT AMRH'S EXPERT (LEO HOARTY) SOLD TO VIZIO AND SAMSUNG'S PATENTS. ........................................................................... 4

III.  AMRH'S MOTION IN LIMINE NO. 3: ANY ARGUMENT, EVIDENCE, TESTIMONY (INCLUDING EXPERT TESTIMONY), OR REFERENCE TO PLAINTIFF'S "WAITING TO FILE" OR "FINALLY FILING" THE VIDEO PATENTS IN 2019, OR OTHER SIMILARLY DEROGATORY OR PEJORATIVE COMMENTARY OR TESTIMONY ON THE TIMING OF THE FILING OF THE VIDEO PATENTS.............................................................. 7

IV.   AMRH'S MOTION IN LIMINE NO. 4: ANY ARGUMENT, EVIDENCE, TESTIMONY (INCLUDING EXPERT TESTIMONY), OR REFERENCE TO PATENT INTERFERENCE PROCEEDINGS, OR APPLICATIONS HELD OPEN FOR THE PURPOSE OF PURSUING PATENT INTERFERENCE PROCEEDINGS, IN THE PROSECUTION HISTORY OF THE PATENT FAMILIES OF THE ASSERTED PATENTS ................................................. 9

V.    AMRH'S MOTION IN LIMINE NO. 5: ANY ARGUMENT, EVIDENCE, TESTIMONY, REFERENCE, OR SUGGESTION THAT AMRH'S INVENTORS ARE UNABLE TO IDENTIFY DIFFERENCES BETWEEN THE ASSERTED PATENTS AND PARTICULAR PRIOR ART REFERENCES ................. 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AstraZeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015)......................................................................................2, 3, 4

*Hillman Grp., Inc. v. KeyMe, LLC*,
    Nos. 2:19-cv-00209-JRG, 2:20-cv-00070-JRG, 2021 WL 1248180 (E.D. Tex.
    Mar. 30, 2021)..............................................................................................................7

*Kern v. Hershberger*,
    No. 4:09-cv-264, 2010 WL 11531096 (E.D. Tex. Sept. 3, 2010).............................................1

*Lone Star Tech. Innovations, LLC v. ASUSTek Comput. Inc.*,
    No. 6:19-CV-00059-RWS, 2021 WL 12137506 (E.D. Tex. May 14, 2021).............................1

*Magnivision v. Bonneau Co.*,
    115 F.3d 956 (Fed. Cir. 1997)...........................................................................................7, 8, 9

*Realtime Data, LLC v. Actian Corp.*,
    No. 6:15-CV-463 RWS-JDL, 2017 WL 11661896 (E.D. Tex. Mar. 24, 2017) ....................2, 3

*Saint Lawrence Commc'ns LLC v. ZTE Corp.*,
    Nos. 2:15-cv-349-JRG, 2:15-cv-351-JRG, 2017 WL 11517123 (E.D. Tex.
    Mar. 2, 2017)................................................................................................................7

*SB IP Holdings LLC v. Vivint, Inc.*,
    No. 4:20-CV-00886, 2023 WL 6799020 (E.D. Tex. Oct. 13, 2023) .......................................7

*Univ. of Pitt. of Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*,
    561 F. App'x 934 (Fed. Cir. 2014) .................................................................................2, 3, 4

**Other Authorities**

Fed. R. Evid. 401 ..............................................................................................................8

Fed. R. Evid. 403 ..............................................................................................................8

Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung" or "Defendants") respond in partial opposition to Plaintiff Anonymous Media Research Holdings, LLC's ("AMRH") Motions *in Limine* (Dkt. 196 ("Mot.")). Specifically, Samsung opposes AMRH's motions *in limine* Nos. 1–3 and 5 for the reasons discussed below.

## I.    AMRH'S MOTION *IN LIMINE* NO. 1: ANY ARGUMENT, EVIDENCE, OR TESTIMONY THAT THE VALUE OF THE ASSERTED CLAIMS OR THE ASSERTED PATENTS IS LIMITED TO PARTICULAR AMENDMENTS MADE TO OVERCOME REJECTIONS IN THE PROSECUTION HISTORY, PARTICULAR ELEMENTS NOT FOUND IN THE PRIOR ART, OR ANYTHING LESS THAN THE CLAIMED INVENTION AS A WHOLE.

Samsung opposes this motion *in limine* ("MIL") as an untimely *Daubert* motion in disguise, and because it would unfairly prejudice Samsung's ability to rebut AMRH's improper attempts to capture the full value of conventional, non-inventive aspects of the accused products.

AMRH argues that Samsung's damages expert, Doug Kidder, conducts an "improper damages analysis" because he limited his analysis to the value of the incremental improvements found in claim limitations added during prosecution to overcome a non-final rejection based on prior art Iyoku, Deng, and Hansen. Mot. at 2.[1] As a threshold matter, AMRH's attack on Kidder's methodology is not a proper motion *in limine* and should instead have been filed as a motion to strike or a *Daubert* motion. *See Lone Star Tech. Innovations, LLC v. ASUSTek Comput. Inc.*, No. 6:19-CV-00059-RWS, 2021 WL 12137506, at *2 (E.D. Tex. May 14, 2021) ("But the issue at the *limine* stage is whether the source code itself is reliable. If ASUS believed that Dr. Ducharme's analysis was flawed, the proper remedy was moving to exclude his testimony." (citing *Kern v. Hershberger*, No. 4:09-cv-264, 2010 WL 11531096, at *2 (E.D. Tex. Sept. 3, 2010) ("*Daubert* motions, although disguised as motions in limine, are not timely.")))). Indeed, AMRH moved to

---

[1] AMRH argues more broadly that Kidder's analysis is limited to the allegedly novel claim limitations of the Asserted Patents over *all* prior art, but the arguments in Samsung's response are the same regardless of the scope of prior art at issue.

1

strike the opinions of Samsung's technical expert, Dr. Ben Bederson, on issues concerning the same three pieces of prior art but did not contest that these references are part of the damages case. *See* Dkt. 124 § IV.B ("Dr. Bederson's disclosure of Iyoku + Deng + Hansen as an invalidating obviousness combination should be struck."); Dkt. 149 at 11 n.1.

But, even assuming that this MIL is procedurally proper, which it is not, AMRH's exact reasoning—including its cited cases *Varian* and *AstraZeneca*—has been rejected as "legally flawed." *Realtime Data, LLC v. Actian Corp.*, No. 6:15-CV-463 RWS-JDL, 2017 WL 11661896, at *3 (E.D. Tex. Mar. 24, 2017). Like AMRH, the plaintiff in *Realtime* argued that it was not required to apportion "down to the exact incremental benefit over conventional elements" and instead contended that using the *Georgia-Pacific* factors is the appropriate method "to account for 'incremental benefits.'" *Id.* (citing *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1337–38 (Fed. Cir. 2015)). The Court rejected the argument that "an apportionment analysis need not be focused on the incremental benefit added by the nonconventional elements of a patent claim," concluding that *Varian* and *AstraZeneca* "support the conclusion that a damages analysis must take into account the incremental benefit conferred by the elements of a patent claim taken as a whole" and "that in evaluating the value of a claimed novel combination of otherwise old or conventional elements, 'the question is how much new value is created by the novel combination, **beyond the value conferred by the conventional elements alone**.'" *Id.* (quoting *AstraZeneca*, 782 F.3d at 1339). It is therefore proper for Kidder to assess the incremental value of the Asserted Patents based on the difference in value between the Asserted Patents and conventional aspects of an ACR system as identified by Samsung's technical expert. *See id.* at *4 ("[T]here was some greater value in the combination system that was not present when the components were sold separately." (citing *Univ. of Pitt. of Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*, 561 F. App'x 934,

2

948 (Fed. Cir. 2014))). Indeed, analyzing such differences between conventional and non-conventional aspects of the Asserted Patents is "important to guard against compensation for more than the added value attributable to [the] invention . . . ." *AstraZeneca*, 782 F.3d at 1338; *Varian*, 561 F. App'x at 950.

AMRH's concern that discussing the differences between conventional and non-conventional aspects of the Asserted Patents will cause jury confusion because it introduces the Asserted Patents' prosecution history and invalidity theories AMRH opposes is unfounded. First, Kidder's affirmative damages theory relies on AMRH's RealityMine comparable license, which the parties do not dispute represents built-in apportionment as it relates to the collective value of the Asserted Patents where all three patents are found valid and infringed. Ex. A ¶¶ 132–33, 232–34. Second, the above-discussed cases make clear that differentiating between conventional and non-conventional aspects of the Asserted Patents is key to valuing patents that cover only slight improvements over what already existed. The prior art and distinctions made over the prior art during prosecution are directly relevant to understanding these differences.

AMRH cites no case law holding that a damages expert cannot rely on a technical expert's analysis of pivotal prosecution history events or prior art to determine what limitations may be conventional or non-conventional, or that doing so would cause juror confusion. In fact, this information is necessary to rebut statements by AMRH's expert, Mr. Leo Hoarty, who opines that " ████████████████████████████████████████████████████████ ████████ " and uses this as a justification to ████████████████████████ ████████████████████████████████████████ . Ex. B ¶¶ 47–48. This is not a situation where "a combination of conventional elements is so unique that it can 'substantially create the value' of the entire product." *Realtime Data*, 2017 WL 11661896, at \*3 (citing

3

███████████████████████████████████████████████

*AstraZeneca*, 782 F.3d at 1339). But, if AMRH intends to continue arguing that ███████████

██████████████████████████████████████████████████████████, then

Samsung must be permitted to respond by explaining which elements are conventional.[2] *See, e.g.*,

*AstraZeneca*, 782 F.3d at 1338; *Varian*, 561 F. App'x at 950. And one way to do that is to compare

the asserted claims to prior art and the prosecution history, including art referenced in non-final

rejections.[3] AMRH is therefore incorrect when it concludes that damages are for "Samsung's 'use

of the patented invention as a whole.'" Mot. at 4. Not only does this misquote *AstraZeneca* and

misstate the law (as explained above), but it is necessary for both parties to value the conventional

and non-conventional features of the Asserted Patents, including how these features' values affect

each other. For the foregoing reasons, the Court should deny AMRH's MIL No. 1.

II.    **AMRH'S MOTION *IN LIMINE* NO. 2: ANY ARGUMENT, EVIDENCE, TESTIMONY, REFERENCE, OR SUGGESTION CONCERNING PATENTS UNRELATED TO THE ASSERTED PATENTS IN THIS CASE, INCLUDING THE PATENT AMRH'S EXPERT (LEO HOARTY) SOLD TO VIZIO AND SAMSUNG'S PATENTS.**

Samsung opposes this MIL because it improperly restricts Samsung from cross-examining

AMRH's expert, Mr. Leo Hoarty, regarding issues foundational to the damages-related opinions

he expressed in the declaration he provided as a basis for the opinions of AMRH's damages expert,

Mr. Roy Weinstein. Furthermore, this MIL is overbroad as it relates to Samsung's patents—

Samsung itself is an innovator in the automatic content recognition ("ACR") space, and AMRH

---

[2] Hoarty's attempt to ████████████████████████████████████ is the subject of one of Samsung's motions to strike. Dkt. 132 §§ IV.A–B.

[3] This is particularly true if, as expected, AMRH and its experts refer to and tout the Patent Office's examination efforts leading to the ultimate issuance of the Asserted Patents. Indeed, AMRH includes the full prosecution histories for each Asserted Patent as separate exhibits on the exhibit list. If AMRH suggests that the jury consider and/or defer to the Patent Examiners' efforts generally and consideration of prior art specifically, the jury must also be given the opportunity to consider the specific findings made by the Patent Examiners regarding the allegedly inventive aspects of the allowed claims over the cited prior art.

provides no reason why Samsung or its witnesses cannot reference its innovations and development history.

Hoarty has made statements in this case that AMRH likely intends to introduce at trial, and Hoarty's patent is relevant to rebutting these statements. As examples, Hoarty authored the Declaration of W. Leo Hoarty ("Hoarty Declaration") that was submitted as an appendix to the Expert Report of Roy Weinstein.[4] Ex. B. The Hoarty Declaration is replete with statements regarding the alleged importance of the Asserted Patents, including that the "technology embodied by the Asserted Patents provides a key, enabling step to transform basic fingerprint recognition systems to an ACR system that is useful for commercially viable media measurement" and that



." Ex. B ¶¶ 47–48. Hoarty explains that

" *Id.* ¶ 47. More than just

*Id.* ¶ 48 (emphasis added); *see also id.* ¶ 55 ("AMRH's patented inventions are critical to transforming basic fingerprint recognition technology to an ACR system

.").

Hoarty's puffery about the Asserted Patents opens the door to cross-examination regarding his professional history, including his prosecution and sale of an ACR-related patent and his

---

[4] AMRH characterizes Hoarty as "AMRH's invalidity and ACR industry expert" but completely ignores the Hoarty Declaration that calculates a *damages*-related apportionment value used extensively by Weinstein. AMRH further fails to explain what an "industry expert" is or why Samsung cannot cross-examine an industry expert's experience in the industry in which he is purportedly an expert.

successful efforts to implement that patent's technology at scale into the ACR services provided by a Samsung competitor—Vizio, Inc ("Vizio"). These facts are not in dispute: Hoarty admits he was granted a patent for an ACR system, Vizio bought the patent from him, Vizio hired him to implement his technology into their system, and this technology currently runs on over 30 million smart TVs and is used for, at least, audience measurement, supporting connected TV (CTV) and video-on-demand (AVOD) television ad sales, and targeted advertising. Ex. C ¶ 9; Mot. at 4–5. Hoarty further explained in deposition that his invention "provides a system for accurately tracking viewing of television programming on Vizio smart televisions." Ex. D at 19:24–20:5. When asked whether Vizio practices the Asserted Patents, Hoarty was resolute: "No. . . . I am completely certain there's no . . . overlap." *Id.* at 21:20–22:8. Hoarty therefore confirmed that "it is possible to implement ACR technology with smart TVs for targeted advertising without using what is claimed in the [Asserted Patents]." *Id.* at 22:19–24:14. These facts are relevant to Hoarty's damages-related opinions regarding the alleged value of the Asserted Patents, including his statements that ██████████████████████████████████████████████████████ ████████████████████████████████████████████. For the same reasons, AMRH's claims that introducing such evidence will cause undue prejudice and juror confusion are unfounded.[5]

Finally, AMRH's attempt to preclude Samsung from making any reference to Samsung's own patents is vague, overbroad, and untethered to Samsung's defenses and trial themes it intends to pursue at trial. First, AMRH's cited cases are inapplicable. Samsung will not argue that having

---

[5] To the extent that AMRH's concern is for identifying the amount paid by Vizio for Hoarty's patent and technology, such amount is at least as relevant as any AMRH reference to Samsung revenues, profits, or business activities related to products separate from sales of ACR ads (e.g., sales or profits from TV sales generally or non-ACR advertisements). Samsung submits that all argument and evidence regarding these specific financial details be treated the same and precluded.

technologically similar patents is a defense to infringement. Mot. at 5 (citing *Bio-Tech.*). Nor will Samsung argue that Samsung's use of ACR practices other patents. *Id.* at 5–6 (citing *KAIST IP*). Samsung, however, should be permitted to describe its own history as an innovator in ACR and the story of how it came to develop Samsung Ads' use of ACR, including by making general and specific references to its own patents. Among other reasons, this too is relevant to the value of the Asserted Patents as compared to other contributions. *SB IP Holdings LLC v. Vivint, Inc.*, No. 4:20-CV-00886, 2023 WL 6799020, at *1 (E.D. Tex. Oct. 13, 2023) ("Defendants are allowed, however . . . to present [their own patents] 'in relation to damages.'" (citation omitted)). AMRH cites no case law to the contrary. To the extent AMRH argues that this may cause jury confusion— it will not—the remedy is proper jury instructions, not exclusion. *Id.* at *2.

## III. AMRH'S MOTION *IN LIMINE* NO. 3: ANY ARGUMENT, EVIDENCE, TESTIMONY (INCLUDING EXPERT TESTIMONY), OR REFERENCE TO PLAINTIFF'S "WAITING TO FILE" OR "FINALLY FILING" THE VIDEO PATENTS IN 2019, OR OTHER SIMILARLY DEROGATORY OR PEJORATIVE COMMENTARY OR TESTIMONY ON THE TIMING OF THE FILING OF THE VIDEO PATENTS.

AMRH seeks to exclude what it characterizes as "derogatory or pejorative" references to the timing of the filing of the Video Patents.[6] Mot. at 6. But AMRH fails to provide any authority supporting its assertion that "waiting to file" or "finally filing"—accurate representations of the procedural history—constitutes derogatory or pejorative language. Such factual statements bear little semblance to the types of derogatory or pejorative language courts in this District routinely exclude. *See, e.g.*, *Hillman Grp., Inc. v. KeyMe, LLC*, Nos. 2:19-cv-00209-JRG, 2:20-cv-00070-JRG, 2021 WL 1248180, at *6 (E.D. Tex. Mar. 30, 2021) (precluding derogatory or pejorative references such as "bully," "intimidating," or "brow-beating"); *Saint Lawrence Commc'ns LLC v. ZTE Corp.*, Nos. 2:15-cv-349-JRG, 2:15-cv-351-JRG, 2017 WL 11517123, at *2 (E.D. Tex. Mar.

---

[6] The "Video Patents" are the Asserted Patents.

2, 2017) (precluding references such as "patent troll," "pirate," "bounty hunter," "privateer," "bandit," or "paper patent"). Moreover, the clause "or other similarly derogatory or pejorative commentary or testimony" renders the request both vague and overbroad, and the motion lacks sufficient clarity to remedy these issues.

AMRH further asserts that such "negative suggestion[s]" regarding the timing of the filing of the Video Patents are irrelevant and should otherwise be excluded under Rule 403. Mot. at 6–7. The Video Patents' filing dates are basic, material facts in the timeline of events that directly relate to issues in this case. Fed. R. Evid. 401. Contrary to AMRH's assertion, references to these dates would not entail explaining "the complex history of prosecution" or "the detailed minutiae of practice before the Patent Office during prosecution." Mot. at 7. While Samsung will not argue or suggest at trial that the Video Patents are not entitled to the May 27, 2004 priority date, Samsung should be allowed to present the story of its development of Samsung Ads' use of ACR and how that development predated both the filing and issuance of the Video Patents. AMRH offers no persuasive basis to exclude such framing, particularly when the hypothetical negotiation date itself rests on the timing of the issuance of the Video Patents, which was after Samsung developed the accused ACR system.

For example, AMRH's reliance on *Magnivision v. Bonneau Co.*, 115 F.3d 956 (Fed. Cir. 1997) (Mot. at 6–7), is misplaced. *Magnivision* did not address "derogatory or pejorative" references to the filing dates of the patents in suit. Rather, in *Magnivision*, the defendant introduced allegations of "prosecution irregularities," which primarily concerned an examiner's failure to record a telephone interview, and the jury was then incorrectly instructed that the presumption of validity could be lost due to these procedural lapses. 115 F.3d at 960–61. The Federal Circuit held that such evidence was irrelevant to the question of validity and that defendant's extensive reliance

8

on such evidence or argument, including over fifty pages of transcript, unfairly prejudiced the trial. *Id.* at 961. In contrast, Samsung is not asserting any procedural irregularities before the Patent Office nor suggesting that such issues would affect the presumption of validity. Moreover, any reference to the 2019 filing dates will not be presented in a way that suggests the timing bears on the validity of the Video Patents. For these reasons, AMRH's motion should be denied.

IV.    **AMRH'S MOTION *IN LIMINE* NO. 4: ANY ARGUMENT, EVIDENCE, TESTIMONY (INCLUDING EXPERT TESTIMONY), OR REFERENCE TO PATENT INTERFERENCE PROCEEDINGS, OR APPLICATIONS HELD OPEN FOR THE PURPOSE OF PURSUING PATENT INTERFERENCE PROCEEDINGS, IN THE PROSECUTION HISTORY OF THE PATENT FAMILIES OF THE ASSERTED PATENTS**

Samsung agrees to this motion *in limine* to the extent it precludes Samsung from presenting argument, evidence, testimony, or making reference to the patent interference proceedings, or lack thereof, referenced in AMRH's Motion *in Limine* No. 4. Mot. at 7–9.

V.    **AMRH'S MOTION *IN LIMINE* NO. 5: ANY ARGUMENT, EVIDENCE, TESTIMONY, REFERENCE, OR SUGGESTION THAT AMRH'S INVENTORS ARE UNABLE TO IDENTIFY DIFFERENCES BETWEEN THE ASSERTED PATENTS AND PARTICULAR PRIOR ART REFERENCES**

In this MIL, AMRH seeks to preclude Samsung from showing that AMRH's inventors cannot identify differences between the Asserted Patents and particular prior art references. AMRH's MIL focuses on a discovery dispute relating to 30(b)(6) deposition questioning of Mr. Christopher Otto regarding key moments in the prosecution history of the Asserted Patents. Samsung opposes this MIL. Whether the Asserted Patents' inventors—who were the designated witnesses on the Asserted Patents' prosecution history—can identify the differences between the Asserted Patents and prior art identified in pivotal moments in the Asserted Patents' prosecution history, like non-final rejections, is relevant to issues of invalidity and damages at least because such evidence tends to show that the incremental benefit of the Asserted Patents over highly relevant prior art was, at most, minor.

AMRH's MIL focuses on Samsung's deposition questioning of Otto, AMRH's 30(b)(6) witness and co-inventor of the Asserted Patents, claiming that he was not designated to testify on differences between the Asserted Patents and prior art. Mot. at 9–10. Samsung's deposition questions related to the differences between key pieces of prior art cited in non-final rejections of the Asserted Patents' prosecution history that fell squarely within the bounds of Samsung's 30(b)(6) Topics 3, 7, and 8, on which Otto was designated as AMRH's corporate witness. *See* Ex. E. As a preliminary matter, AMRH mischaracterizes the scope of Topics 3, 7, and 8. Otto's designation on Topic 3 was not limited to "general testimony relating to awareness of Prior Art." Mot. at 9. Samsung's 30(b)(6) Topic 3 was broader and included "[t]he preparation and prosecution of the Asserted Patents and any Related Patents/applications in the USPTO or any foreign patent office." Dkt. 196-3 at 6. AMRH designated Otto on the full scope of Topic 3, but slightly limited it to "general non-privileged testimony on this topic based on information known or reasonably available to AMRH." *Id.* at 6.[7] AMRH also mischaracterizes Topic 7 as limited to "investigation of Prior Art before filing suit." Mot. at 9. Topic 7 included "any Prior Art investigation conducted . . . during the prosecution of any of the . . . Asserted Patents." Dkt. 196-3 at 8. AMRH made similar objections but otherwise designated Otto on its full scope. *Id.* Lastly, Topic 8 covered AMRH's knowledge of the Prior Art, *including*, *inter alia*, when it became known to AMRH and the circumstances under which this knowledge was acquired. *Id.* at 8. Again, AMRH made similar objections but otherwise designated Otto on its full scope. These three Topics capture Samsung's deposition questions related to non-final rejections based on prior art, which AMRH attempts to exclude through its MIL.

---

[7] AMRH further objected to the Topic as "unduly burdensome in so far as it seeks information regarding foreign patent offices and it seeking of information regarding 'all persons involve in said preparation and prosecution'" but this objection is immaterial to the issues here.

AMRH's concerns regarding the scope of the "Prior Art" in these 30(b)(6) Topics being "hundreds" of references and the prosecution history spanning "thousands" of pages are red herrings. Mot. at 9–10. The parties' dispute over Otto's deposition testimony, as explained in email correspondence cited by AMRH, concerned whether AMRH would permit a "follow up deposition remotely . . . limited to the prosecution history materials, including the specific prior art rejections and resulting representations and agreements made with the examiner." Dkt. 196-4. The parties resolved that dispute when AMRH informed Samsung that after investigation "AMRH's knowledge (and knowledge available to AMRH) is consistent with Otto's testimony." Dkt. 196-4. AMRH is therefore either mistaken or disingenuous when it argues that Otto could not be reasonably educated on the full scope of Topics 3, 7, and 8. By AMRH's own admission, AMRH and Otto cannot recall and identify the differences between the Asserted Patents and three prior art references relied upon by the examiner in a non-final rejection. Dkt. 196-4.

Whether AMRH and Otto know if there are differences between prior art cited in non-final rejections—pivotal prosecution events—and the Asserted Patents is at least relevant to understanding what incremental improvement or benefit there is or perceived to be by AMRH and Otto between the Asserted Patents and the prior art. This MIL should therefore be denied.

11

████████████████████

DATED:  August 11, 2025

Respectfully submitted,

By:  */s/ Robert W. Unikel*
Robert W. Unikel
robertunikel@paulhastings.com
Grayson Cornwell (pro hac vice)
graysoncornwell@paulhastings.com
Daniel J. Blake (pro hac vice)
danielblake@paulhastings.com
PAUL HASTINGS LLP
71 South Wacker Drive, Forty-Fifth Floor
Chicago, IL 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

Allan M. Soobert
allansoobert@paulhastings.com
James V. Razick (*pro hac vice*)
jamesrazick@paulhastings.com
David Valente (*pro hac vice*)
davidvalente@paulhastings.com
Jason Mikus *(pro hac vice)*
jasonmikus@paulhastings.com
Kevin Stewart *(pro hac vice)*
kevinstewart@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C. 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

Matthias A. Kamber
matthiaskamber@paulhastings.com
PAUL HASTINGS LLP
101 California Street Forty-Eighth Floor
San Francisco, CA.94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

Andrea Pallios Roberts
andrearoberts@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, CA.94304
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

12

████████████████████████████

> Elizabeth L. Brann
> elizabethbrann@paulhastings.com
> Ariell N. Bratton
> ariellbratton@paulhastings.com
> PAUL HASTINGS LLP
> 4655 Executive Drive, Suite 350
> San Diego, CA  92121
> Telephone: (858) 458-3000
> Facsimile: (858) 458-3005
>
> Melissa R. Smith (TX Bar No. 24001351)
> melissa@gillamsmithlaw.com
> GILLAM & SMITH, LLP
> 303 S. Washington Ave.
> Marshall, TX 75670
> Telephone: (903) 934-8450
> Facsimile: (903) 934-9257
>
> *Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on August 11, 2025. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by email.

> */s/ Robert W. Unikel*
> Robert W. Unikel

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that under Local Rule CV-5(a)(7), the foregoing document is filed under seal pursuant to the Court's Protective Order entered in this matter.

> */s/ Robert W. Unikel*
> Robert W. Unikel

13