**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **ANONYMOUS MEDIA RESEARCH HOLDINGS, LLC,** | |
| **Plaintiff,** | **Civil Action No. 2:23-cv-00439-JRG-RSP** |
| **v.** | |
| **SAMSUNG ELECTRONICS CO., LTD et al.,** | |
| **Defendant.** | |

## <u>REPORT AND RECOMMENDATION</u>

Before the Court are the Motion for Summary Judgment of Invalidity Under 35 U.S.C. §101 filed by Defendants (**Dkt. No. 127)** and the Motion for Partial Summary Judgment of Validity Under 35 U.S.C. §101 filed by Plaintiff (**Dkt. No. 130**). In their motion, Defendants move for summary judgment that all asserted claims are directed to ineligible subject matter. In its motion, Plaintiff seeks a judgment that the asserted claims of the three asserted patents are not directed to abstract subject matter.

### I.    APPLICABLE LAW

#### A.  Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine

dispute of material fact. Celotex v. Catrett, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." Anderson, 477 U.S. at 247–48 (emphasis added). The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. Id. at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

### B. Subject Matter Eligibility

Under Title 35, patentable inventions are divided into broad statutory categories of invention. See 35 U.S.C. § 101 (". . . process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . .."). So-called "abstract ideas,"

2

however, are ineligible for patent protection under the current law. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2352, 189 L. Ed. 2d 296 (2014). A § 101 analysis begins by identifying whether an invention fits within one of the four statutorily provided categories of patent-eligible subject matter. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713-14 (Fed. Cir. 2014).

Section 101 contains an important implicit exception: laws of nature, natural phenomena, and abstract ideas. *Id.* at 714 (citing *Alice*, 134 S.Ct. at 2354). When presented with an eligibility challenge, the Court must first determine whether claims at issue are directed to eligible subject matter or to one of these exceptions. *Id.* (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1296-97, 182 L. Ed. 2d 321 (2012)). If the Court determines that the claims at issue are directed to ineligible concepts, the Court must determine whether there exists "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Ultramercial*, 772 F.3d at 714 (quoting *Mayo*, 132 S.Ct. at 1294) (alteration in original).

Courts use a two-step framework for analyzing whether the claims at issue claim patent-eligible subject matter. *Id.* at 217–18; *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). First, courts "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* (quoting *Alice*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77–78 (2012))). In doing so, the court must be wary not to over generalize the invention, as "all inventions . . . embody, use, reflect, rest

3

upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 71) (ellipsis in *Alice*).

"If this threshold determination is met, [courts] move to the second step of the inquiry and 'consider the elements of each claim, both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application.'" *Enfish*, 822 F.3d at 1334 (quoting *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 79)). A claimed invention is patent-eligible at *Alice* Step Two when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 225) (quoting *Mayo*, 566 U.S. at 73 (internal quotation marks and brackets omitted)).

Patent eligibility is a question of law, based on underlying facts. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018), *cert. denied,* 139 S. Ct. 2747 (2019), *reh'g denied,* No. 18-1199, 2019 WL 3976449 (Aug. 23, 2019). Whether the claim elements or combination are well-understood, routine, and conventional is a question of fact. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

## II.    ANALYSIS

In their Motion, Defendants argue that all asserted claims of the three asserted patents are directed to ineligible subject matter.  They argue that the '849 patent is "directed to and focused on the abstract idea of determining a channel by using information about two sequential pieces of media and displaying results." Dkt. No. 127 at 13.  They argue that the '848 patent "claims the abstract idea of generating a 'clean play stream' from a 'raw play

stream'—that is, 'scrubbing' data to clean it up." They contend this "can be done manually and is similar to creating a list and simply correcting any entries that are obviously errant." *Id*. at 24. Finally, they argue that the '911 patent is "directed to the abstract idea of changing how long to sample content to recognize it."

In its motion, Plaintiff argues that "Samsung abstracts the claims beyond recognition and asserts broadly that 'one or more' of these descriptions are abstract ideas." For instance, Plaintiff recites in detail the steps of Claim 1 of the '848 and contends that "taken together, these claim steps are directed to one implementation of computer-enabled media measurement devices that requires interactions between specific, concrete components to improve media measurement and ACR technology: end user devices that capture actual content data samples, computers that receive those samples over a network, a database queried to obtain content matches, and computers that implement specific elements to analyze an ordered sequence of ACR identification results." Dkt. 130 at 10-11. Plaintiff emphasizes that "the steps recited in the claims have no pre-computer analog" and "describe a technical solution that does what no human can do: receiving a stream of content samples captured from a user's device, matching content samples by querying against an electronic reference database, producing a play stream of digital identifiers across the vast universe of existing media content, and then self-correcting for errors in that list based on deviations from the expected pattern of the samples." *Id.*

Similarly, with the '849 patent, Plaintiff contends that the claims "are directed to an implementation of ACR technology—they require capturing a stream of data samples, searching a database to perform ACR identification, sequencing the results, and using the

5

ordered sequence of content identifiers to determine channel information….This implementation solved a challenge in media measurement systems that often could not detect channel from media samples." *Id*. at 14.

As to the '911 patent, Plaintiff argues that: "Claim 1 of the '911 Patent recites a method for dynamically adjusting the sampling window of the next data sample that is submitted for ACR content identification. The claim steps make clear that the underlying process operates within the context of ACR-based media measurement: (1) receiving, at one or more computers, video data from a monitoring device, (2) adjusting the sampling window to select a next sample based on the results of ACR identification, (3) submitting the next sample for ACR identification, and (4) generating a play stream of content identifications." *Id*. at 14. These steps result in a system that "uses a smaller amount of video data, thereby preserving resources," which is "a patent-eligible technological solution that is 'necessarily rooted in computer technology.'" *Id*.

### A. *Alice* Step 1

Defendants devote much of their argument to contending that the patents are not novel, that they did not invent automatic content recognition (ACR) or add any inventive concepts to the technology. That may be relevant to defenses of anticipation or novelty, but it does not render the subject matter abstract. The Court finds persuasive Plaintiff's argument that the asserted claims of the three patents are directed to a specific implementations of solutions to problems in the software arts and are accordingly not abstract. See, *e.g.*, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).

**B.**  *Alice* **Step 2**

Because the Court finds that the asserted claims are not directed to an abstract idea, we need not move on to *Alice* step 2.

### III.    CONCLUSION

Accordingly, the Court **RECOMMENDS** that the Motion for Summary Judgment of Invalidity Under 35 U.S.C. §101 filed by Defendants (**Dkt. No. 127**) be **DENIED**, and the Motion for Partial Summary Judgment of Validity Under 35 U.S.C. §101 filed by Plaintiff (**Dkt. No. 130**) be **GRANTED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report **by not later than September 12, 2025** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 1st day of September, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE