IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ANONYMOUS MEDIA RESEARCH HOLDINGS, LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. *and* SAMSUNG ELECTRONICS CO., LTD.,<br><br>    *Defendants*. | §<br>§<br>§<br>§<br>§    CASE NO. 2:23-CV-00439-JRG-RSP<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM ORDER

Before the Court is Plaintiff Anonymous Media Research Holdings, LLC's Motion to Strike Portions of Benjamin Bederson's Expert Reports. **Dkt. No. 124**. The Motion is **GRANTED** only in part for the following reasons.

### I.  APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*,

526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting Fed. R. Evid. 702 advisory committee note)). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful

2

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II.      ANALYSIS

### A. Untimely Disclosure of "Admitted Prior Art."

Anonymous Media Research Holdings, LLC ("AMRH") argues that Dr. Bederson's obviousness combinations relying on the "Admitted Prior Art" should be stricken because (1) the "Admitted Prior Art" was not properly identified in Samsung's invalidity contentions, (2) six of the seven references within it were not specifically disclosed in Samsung's invalidity contentions, and (3) Dr. Bederson does not indicate which reference from "Admitted Prior Art" he relies on for any of his invalidity theories. Dkt. No. 124 at 4. In response, Samsung argues that its invalidity contentions included language to "incorporate by reference each and every prior art reference . . . of the Asserted Patents . . . including . . . prior art discussed in the specification," and all seven references AMRH now complains of were referenced in the specification of the Asserted Patents. Dkt. No. 149 at 1.

In reply, AMRH argues that Samsung's broad statements of incorporation in the invalidity contentions are "insufficient," given that they are relied upon for invalidity purposes and not background purposes, particularly given that Samsung disclosed "over 20,000 possible obviousness combinations." Dkt. No. 164 at 1–2 (first citing *Pozen Inc. v. Par Pharm., Inc.*, No. 8-cv-437, 2010 WL 11431483, at *8 (E.D. Tex. June 8, 2010) (ruling that

3

incorporation is insufficient for references used for invalidity purposes); and then citing *Realtime Data LLC v. Packeteer, Inc.*, No. 8-cv-144, 2009 WL 4782062, at *3 (E.D. Tex. Dec. 8, 2009) (finding that reservation language was insufficient where defendant "disclosed over 500 prior art references," resulting in an "impossibly high number of combinations to reasonably serve the notice function"). In sur-reply, Samsung argues that *Pozen* allows experts to rely on these incorporated references for "background purposes or a discussion of the state of the art," and Dr. Bederson only relies on the Admitted Prior Art to set a background of the state of the art. Dkt. No. 180 at 1–2. Specifically, Samsung argues Dr. Bederson "opined that each of the Asserted Patents is invalid as obvious based on particular prior art references 'in view of' the Admitted Prior Art." *Id.* at 1.

AMRH argues in its reply that if Admitted Prior Art were simply background knowledge of a POSITA, then it would be applicable to every ground such that Dr. Bederson would not need to specify it for "just some of them." Dkt. No. 164 at 1. Samsung argues in sur-reply that this is not sufficient grounds for striking Dr. Bederson's testimony. Dkt. No. 180 at 8 (relying on *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 16-cv-55, 2017 WL 4619791, at *2 (E.D. Tex. Oct. 16, 2017) (striking an expert opinion where it was clear that the expert was relying on particularly cited prior art references to support invalidity)).

The Court begins its analysis with Local Patent Rule 3-3, which requires:

Not later than 35 days after the Initial Case Management Conference with the Court, each party opposing a claim of patent infringement, shall serve on all parties its "Invalidity Contentions" which must contain the following information: The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious.

P.R. 3-3(a). The party's invalidity contentions must also include "[a] chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found." P.R. 3-3(c). "The local patent rules exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007). They "are essentially a series of case management orders," and "the exclusion of evidence is often an appropriate sanction for the failure to comply with such deadlines." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363, 1369 (Fed. Cir. 2006).

Whether the six references in Admitted Prior Art were sufficiently disclosed depends on whether those references were only "background material" relevant to the "state of the art," or instead are used to opine specifically on invalidity. *See Huawei Techs.*, 2017 WL 4619791, at *2. In *Huawei*, the expert's opinion discussed a reference in terms of teaching elements of the claims of the patents at issue in that case, going further than "opinion concerning the general . . . background or state of the art," into "invalidity" territory. *Id.*

The Court can state without hesitation that incorporation by reference of all prior art listed in the specification or prosecution history of a patent does not satisfy the requirements of the Local Patent Rules regarding invalidity contentions. That there is *no* exemption to express disclosure of references listed in the intrinsic record is made clear by the fact that such references *are* exempted from the requirement of P.R. 3-4(b), which requires production of a copy of any reference "which does not appear in the file history" (showing that P.R. 3-3(a)'s disclosure requirements apply to references that "appear in the file history").

There is also no requirement that the invalidity contentions disclose any or all of the "background state of the art" that is *not* relied upon to invalidate the patent, by anticipation or obviousness, alone or in combination. Of course, for an expert to testify about a reference as part of the background art, that art must be referenced in the expert's report. However, unlike invalidating art, it need not have been preceded by disclosure in the contentions.

Dr. Bederson's report can be read as only referring to the "Admitted Prior Art" as background, and not as being relied upon to satisfy the limitations of the claims. But it can more easily be read in the opposite way. Accordingly, the motion to strike is **GRANTED** to the extent that Dr. Bederson will not be permitted to include references to the Admitted Prior Art as anticipating or rendering obvious (alone or in combination) any limitation of an asserted claim, and such opinions in his report are hereby stricken to that extent. The Court is not striking the opinions to the extent that Dr. Bederson testifies only to the specific references that were identified in the contentions as required by P.R. 3-3(a).[1]

### B. Untimely Disclosure of Combination of Iyoku, Deng, and Hansen

Although similar to the previous arguments in that Iyoku, Deng, and Hansen are among the disputed references in the Admitted Prior Art, AMRH has an additional reason to strike here because Dr. Bederson intends to use Iyoku-Deng-Hansen, a subset of those references, as an invalidity combination. AMRH argues that this specific combination was not disclosed as an invalidating prior art combination for the '848 patent in the invalidity report, and therefore should be stricken. Dkt. No. 124 at 8.

---

[1] During the pretrial conference, an exception was made for three references (two for Haitsma and one for Seo) that are discussed in the Detailed Description of the '848 patent (Col. 5:54-66) along with Wang (see Dkt. No. 221 at 150) based on the extensive disclosure during discovery of such references. Those are DX17 – DX20 and are not excluded above.

6

Samsung concedes that "Dr. Bederson did not assert invalidity based on" this combination in his opening invalidity report. Dkt. No. 149 at 10. But Samsung argues Iyoku-Deng-Hansen was not offered as an invalidity combination until the non-infringement report because Dr. Bederson "believed AMRH was adhering to the distinction made during the prosecution" history, which was discussed in Dr. Bederson's report, "between the required 'raw play stream' and 'clean play stream,'" as this combination teaches. *Id.* 9–10. Samsung continues, AMRH, through its expert Dr. Malek, is now taking the position that "interim match data . . . constitutes a raw play stream and that the processed content identification results . . . is a corresponding clean play stream." *Id.* at 10–11. Samsung thus argues its expert's reliance on the combination as an invalidity reference, rather than just background discussion, is now necessitated by AMRH's position. *Id.* at 11.

AMRH argues, in reply, that if it was a new theory, Samsung should have sought to strike that theory instead. Dkt. No. 164 at 3. Samsung, in sur-reply, reiterates that its report included "a detailed discussion of these references and their role in the prosecution . . . ." Dkt. No. 180 at 3.

Here, Samsung failed to meet the disclosure requirements of Local Patent Rule 3-3(a) with respect to these three prior art references, as noted above. Samsung also failed to meet the requirements of P.R. 3-3(b) with respect to the Iyoku-Deng-Hansen combination. Now Samsung is seeking to supplement its expert's invalidity report through his non-infringement report. That is a bridge too far.

Accordingly, the Motion to Strike as to the combination of Iyoku-Deng-Hansen is **GRANTED**.

### C. Unreliability of Opinion Regarding Seet Provisional

AMRH argues that Dr. Bederson's opinion that that Seet Provisional "provides support for Seet's disclosures," is "conclusory, and contradicts the contents of the reference." Dkt. No. 124 at 10. First, AMRH contends that Dr. Bederson ignores the Provisional's definition of the term "media" as an "audio source," which is controlling for "claim construction inherent in written description analysis," an approach that "has been expressly rejected by the Federal Circuit." *Id.* at 10–12 (citing *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011)). Second, AMRH argues that Dr. Bederson's use of Seet as an invalidity reference is improper because it cannot claim priority to the Seet Provisional due to the lack of written description support in the Provisional for certain material. *Id.* at 12.

These same arguments were raised in AMRH's Motion for Partial Summary Judgment Regarding Seet, Neumeier, and the Audio Patents, Dkt. No. 129, and the Court has already denied them. Dkt. No. 231. While the standard is different here than on a motion for partial summary judgment, for the reasons set out in the Report & Recommendation, the Court finds that Dr. Bederson's opinion is sufficiently reliable to warrant not taking the factual determination of credibility away from the jury.

Accordingly, the Motion to Strike on this ground is **DENIED**.

### D. "Practicing the Prior Art" Opinion

AMRH argues that Samsung, through Dr. Bederson, attempts to backdoor a "practicing the prior art" defense in violation of this Court's Standing MIL No. 18. Dkt. No. 124 at 14. Specifically, AMRH takes issue with the following line in Dr. Bederson's Invalidity

8

Report: "[T]o the extent Dr. Malek claims this functionality infringes, it is clearly covered by the prior art." *Id.*; Dkt. No. 124-8 ¶ 125.

Samsung distinguishes between a "practicing the prior art" argument, simply seeking to "defeat a claim of literal infringement or establish invalidity . . . by pointing to similarities between an accused product and the prior art," and an allowed argument form, merely "arguing that if a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art." Dkt. No. 149 at 11–12 (quoting *01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018)). Samsung contends that Dr. Bederson's statement fits into the allowed category because it "explains that if the 'clean play stream' language of the asserted claims is read broadly to cover Samsung's accused ACR system, as Dr. Malek opines, then that 'same broad construction will read on the prior art.'" *Id.* at 12.

The Court agrees with Samsung that it is not seeking to backdoor a "practicing the prior art" argument. However, this does not allow Dr. Bederson to express opinions based on the Iyoku, Deng and Hansen combination excluded above.

The Motion to Strike as to this argument is **DENIED**.

E. **Opinion Regarding "raw play stream" Not Based on Court's Claim Construction**

AMRH finally argues that Dr. Bederson adds new limitations to the Court's claim construction regarding the term "raw play stream." Dkt. No. 124 at 14–15. As AMRH correctly notes, the Court previously construed the term "raw play stream" to mean "uncorrected sequence of content identification results corresponding to the sequence of [audio/video] data samples." Dkt. No. 106 at 19 (emphasis added). AMRH argues that Dr.

9

Bederson adds the limitation that the play stream must be "recorded," or not "interim," which is "materially different" from the Court's construction, and is therefore impermissible. Dkt. No. 124 at 15 (quoting *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022)).

Samsung responds that Dr. Bederson is not injecting new requirements but applying the Court's construction to show Samsung's products don't meet the limitations "because the interim matching data to which Dr. Malek points are not 'content identification results,' and thus there is no 'raw play stream.'" Dkt. No. 149 at 19. Specifically, Samsung argues the Court's construction of "raw play stream" "require[s] content identification results." *Id.* And, as Samsung contends, "initial matching data in Samsung's [accused product] is not content identification results . . . [because] the matching data is not kept in memory and needs to be combined with confidence data and other decision-making logic to produce . . . 'results.'" *Id.*

AMRH replies that Dr. Bederson "performs a lengthy prosecution history . . . analysis to determine that the un-claimed requirements must be met to find infringement," therefore these are new claim construction limitations. Dkt. No. 164 at 4–5. AMRH additionally cites several cases that stand for the proposition that claim construction arguments not timely raised are waived. *Id.* at 5 (citations omitted).

Samsung, in sur-reply, reiterates that Dr. Bederson's opinion instead seeks to present its noninfringement argument regarding the product AMRH accuses rather than construe the disputed claim term further. Dkt. No. 180 at 5. Samsung argues that AMRH's cited cases regarding the proposition that later-raised construction arguments are waived are distinguishable.

The Court finds that one case cited by AMRH is helpful. *See Ericsson Inc. v. TCL Communications*, No. 2:15-cv-00011, 2017 WL 5137401, at *9 (E.D. Tex. Nov. 4, 2017), *rev'd on other grounds*, 955 F.3d 1317 (Fed. Cir. 2020). There, the plaintiff sought to argue that the defendant's expert's opinion incorrectly provided claim construction regarding a disputed term, in contravention of this Court's claim construction. *Id.* The defendant argued that it was not claim construction, but a "noninfringement argument," that its "products do not infringe because the accused 'interception module' includes code that is dispersed throughout the operating system, as opposed to being a self-contained segment of code . . . ." *Id.* The defendant sought to show that "a person of ordinary skill in the art would not view the accused software segment as an 'interception module' because the accused code segments [were] not part of a module." This Court there agreed with the defendant, finding that it was "noninfringement argument," rather than claim construction, that should not be excluded and that the jury should "decide which testimony to credit." Id. (citing *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1330–41 (Fed. Cir 2010) (distinguishing infringement opinions from claim constructions)). The key point is that the experts were debating the plain meaning of "module" to a person of skill in the relevant art.

Here on the other hand, Dr. Bederson engages in pure claim construction in Paragraphs 74 – 104 of his non-infringement report. *See* Dkt. No. 149-4. There is no other way to describe the way he parses the prosecution history, inventor testimony and prior art. There is little or no discussion of "content identification results" as used in anything other than the intrinsic record. These are all arguments that should have been presented to the Court during claim construction, rather than to the jury through an expert witness. Paragraphs 128 and 175

repeat this impermissible claim construction. However, the other paragraphs identified by Plaintiff's motion (see Dkt. No. 124 at 19) do not. Those paragraphs may have other issues, but they do not constitute claim construction. Accordingly, **paragraphs 74-104, 128 and 175** are **stricken**. Paragraphs 107-108, 111-112, 115, 124-125, 153, 180, 182, 192, 194, 208, and 210 are not stricken on this basis.

### III. CONCLUSION

Accordingly, AMRH's Motion to Strike Dr. Bederson's Expert Reports (Dkt. No. 124) is **GRANTED** only in part as set out above.

**SIGNED** this 16th day of September, 2025.

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE