IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ANONYMOUS MEDIA RESEARCH HOLDINGS, LLC, <br> *Plaintiff*, <br> v. <br> SAMSUNG ELECTRONICS AMERICA, INC. *and* SAMSUNG ELECTRONICS CO., LTD., <br> *Defendants*. | CASE NO. 2:23-CV-00439-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.'s Motion to Exclude the Apportionment-Related Opinions of Mr. W. Leo Hoarty. **Dkt. No. 132**. In the Motion, Samsung asks the Court to exclude apportionment-related opinions of Plaintiff's technical benefits expert, Mr. Hoarty, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The Parties have fully briefed the Motion. Dkt. Nos. 147, 167, 176. The Motion is **DENIED** for the following reasons.

### I.     APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. at

592-93. District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting Fed. R. Evid. 702 advisory committee note)). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II.   ANALYSIS

Samsung argues that the Court should exclude Mr. Hoarty's apportionment opinions for several reasons. The Court addresses each in turn.

### A. Inclusion of Prior Art Features in Incremental Value

Samsung argues that Mr. Hoarty's apportionment rate fails to account for the incremental benefits of the Asserted Patents, as required by *Omega Patents LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377–78 (Fed. Cir. 2021), and *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015), because it "includes the value of . . . features known in the prior art." Dkt. No. 132 at 8. Specifically, Samsung takes issue with two things Mr. Hoarty does in his analysis: (1) his analysis concludes that the Asserted Patents provide "a key enabling step," but does not explain why or identify any claim elements that provide such a step, and (2) in place of what should be the incremental value of the sub-features that accomplish the accused functionality, his analysis uses the "incremental contribution of the Asserted Patents to those sub-features," thus capturing the value of prior art features. *Id.* at 8–9 (citing Dkt. No. 132-1 ¶¶ 47–48, 55). Therefore, Samsung argues, Mr. Hoarty "failed to apportion . . . between the patented features and . . . non-patented features" and did not tie "damages to the claimed invention's" market demand, as required by *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014). And, as Samsung concludes, the apportionment rate analysis should therefore be excluded. *Id.* at 10.

3

AMRH advances two arguments in response. First, as AMRH contends, Mr. Hoarty's apportionment methodology is "more detailed than" other methodologies that this Court allowed in *Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 22-CV-343, 2024 WL 1289784, at *3 (E.D. Tex. Mar. 26, 2024) (allowing a "technique of counting entire [infringing] features" because the expert "has apportioned to individual features at the level [defendant] advertises"), *Smart Path Connections, LLC v. Nokia of Am. Corp.*, No. 22-CV-296, 2024 WL 1096093, at *3 (E.D. Tex. Mar. 13, 2024) (allowing "feature counting apportionment" because the expert "apportioned to individual features at the level [defendant] advertises."). Dkt. No. 147 at 6. In AMRH's view, Mr. Hoarty's method is more detailed because he not only accounts for the percentage of infringing features versus non-infringing features, but also weighs them in a manner tied to the facts of the case using Samsung's "internal cost allocating percentages," his own expertise, and his analysis of how the infringing features contribute. *Id.* at 6–7. Second, AMRH argues that *Omega Patents* and *Cisco* only stand for the proposition that a patentee must apportion to "only the patented features of an accused product," and the Court rejected Samsung's argument that an apportionment "must exclude [prior art] components included in the claims of the patented invention." Id. at 7–8 (citing *SB IP Holdings v. Vivint*, No. 4:20-CV-886, 2023 WL 6601415, at *2 (E.D. Tex. Oct. 10, 2023)).

In reply, Samsung first points to the "schematics on which Hoarty relied," and argues that he failed to properly apportion because the "system architectural schematics" he relied on do not distinguish between patented and unpatented features, and he failed to account for the unpatented features within the "sub-features" he counted as infringing. Dkt. No. 167 at 1. By way of example, Samsung points to Mr. Hoarty's counting of the Fingerprints Database, a sub-feature which Samsung contends the *inventors* admitted "existed in the prior art," and Mr. Hoarty

4

admitted was "well known before[hand]." *Id.* (first citing Dkt. No. 132-1 ¶¶ 53–55 (Fingerprints Database), 57–59 (fingerprint capture, identification, and matching) (Mr. Hoarty's Report); then citing Dkt. 132-5 at 54:21–55:8, 157:18–158:7, 212:21–25, 213:1–5 (Mr. Hoarty's Deposition); and then citing Dkt. No. 132-2 at 37:9–17, 62:16–64:4, 97:21–24, 101:18–102:3 (The Inventors' Deposition). Samsung next points out that both *Correct Transmission* and *Smart Path Connections* were dependent upon the expert's apportionment based on "individual features at the level [defendant] advertised," but argues that Mr. Hoarty did not apportion to the level of Samsung's advertising because the advertising referenced discusses ACR generally. *Id.* at 2. Samsung finally argues that *Vivint* did not address "admissions that counted features" that were "in the prior art," which it contends is at issue here. *Id.*

In sur-reply, AMRH argues that the point of *Correct Transmission* and *Smart Path Connections* was that "it is acceptable to apportion to features at the level defendant itself purports," and Mr. Hoarty's methodology is consistent with that point. Dkt. No. 176 at 1.

The Court finds Samsung's arguments unpersuasive. Mr. Hoarty's apportionment is sufficiently reliable. "[A]pportionment can be addressed in a variety of ways, including 'by careful selection of the royalty base to reflect the value added by the patented feature [or] . . . by adjustments to the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof.'" *Exmark Mfg. Co. v. Briggs & Stratton Power Prod. Grp.*, LLC, 879 F.3d 1332, 1348 (Fed. Cir. 2018). Here, Mr. Hoarty's technique of counting entire features that infringe to reach his opinion rather than attempting to further apportion within the features is reasonable given the facts of this case. There is no perfect apportionment, and Mr. Hoarty has apportioned from the level at which Samsung advertises the ACR System to individual infringing features. The Court finds this sufficiently reliable.

### B. General Methodology

Samsung next argues that Mr. Hoarty's methodology consists of (1) determining the costs of the Matching and Analytics Servers, (2) identifying the sub-features within those servers that implicate the Asserted Patents to attain a "percentage" that do, and (3) applying that percentage to the server costs. Dkt. No. 132 at 10. Samsung first takes issue with Mr. Hoarty's failure to cite authority to support that this is a reliable methodology. *Id.* Then, beginning with the first step, Samsung takes issue with Mr. Hoarty's assumption that the costs of the Matching and Analytics Servers represent all ACR costs, when ACR costs are in fact "composed of additional components not included in his cost calculation." *Id.* at 11 (citing Dkt. No. 132-1 ¶¶ 51, 53, 57). In the second step, Samsung criticizes Mr. Hoarty's counting, and specifically his assumption "that the full value of the identified sub-features is attributable to the Asserted Patents"— pointing again to his inclusion of fingerprinting, searching, and matching, which he admits is in the prior art. *Id.* at 11–12. Also in the second step, Samsung takes issue with Mr. Hoarty's conclusion that "the identified sub-features are at least as valuable as the other sub-features" because he does not explain the premises on which that conclusion relies, namely how the Asserted Patents are "critical" to fingerprint recognition or provide benefits to processing ACR data. *Id.* at 12 (citing Dkt. 132-1 ¶ 55). Samsung finally cites *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 1389304, at *4 (E.D. Tex. Mar. 6, 2014) ("[A]ttribution of equal value to all 19 RAS features is not based on any theory that meets the *Daubert* criteria . . . .") and *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-201, 2017 WL 1322550, at *6 (E.D. Tex. Apr. 6, 2017) ("[T]his approach is inherently flawed because it assumes that all ten steps of claim 1 are of equal value . . . .") for the proposition that "this District ha[s] excluded similarly arbitrary approaches to apportionment."

In response, AMRH first argues that the *Correct Transmission*, *Smart Path Connections*, and *SB IP Holdings* cases support Mr. Hoarty's methodology. Dkt. No. 147 at 8. AMRH then argues that criticisms that attack allegedly mistaken factual assumptions go to weight, not admissibility. *Id.* at 8–9 (citations omitted). To Samsung's first step, AMRH argues that (1) the Samsung document Mr. Hoarty relied on identifies cost categories beyond the two servers, (2) he verified that two categories were associated with the two servers, and (3) his analysis accounted for Samsung's categorization of the costs of each ACR feature, not all ACR costs. *Id.* at 9–10 (citing Dkt. No. 147-7). To Samsung' second step, AMRH argues that (1) although Mr. Hoarty did not explain what sub-features were implicated, he relied on Dr. Malek's analysis that did, (2) his alleged failure to separate out prior art sub-features re-hashes Samsung's prior argument, and (3) he rebuts Samsung's expert's opinion that some features can be removed from ACR, explaining why they cannot be "without sacrificing the core benefits," and (4) he explains why the Asserted Patents enable the full benefits. *Id.* at 10–12 (citing Dkt. No. 132-1 ¶¶ 54, 58 (pointing to Dr. Malek's analysis), 12–13, 15–32 (rebutting Samsung's expert), 46, 48 (explaining benefits)). AMRH finally argues that *Stragent* and *Eidos Display* do not support Samsung: in *Stragent*, the expert admitted he is not a "technical expert in these technologies," 2014 WL 1389304, at *4, and Dr. Hoarty is an expert in the technologies at issue; and in *Eidos Display*, the court found that identifying a distinguishing claimed step over prior art, and apportioning to only that claimed step, "failed to pass muster," 2017 WL 1322550, at *6, which is the approach Samsung now complains that Mr. Hoarty did not take. Dkt. No. 147 at 12–14.

In reply, Samsung begins by arguing that Mr. Hoarty counted features only with respect to the two servers, rather than with respect to the entire ACR system, thereby inflating his calculation. Dkt. No. 167 at 2–3 (citing Dkt. No. 132-1 ¶¶ 51, 53, 57, 56 n.14, 61 n.16). Samsung

7

next argues that Mr. Hoarty counted sub-features as though the entirety of each practices the Asserted Patents, when neither he nor Dr. Malek opined that. *Id.* at 3 (citing Dkt. No. 132-1 ¶ 54). Samsung continues that Mr. Hoarty, in his deposition, testified that he did not perform a claim-specific benefits analysis, and, in his report, he still does not explain what the "key enabling step" is. *Id.* at 3–4 (first citing Dkt. No. 132-1 ¶¶ 45–63; and then citing Dkt. No. 132-5 at 190:5–192:11, 192:24–194:18, 195:8–198:8). Finally, Samsung argues that *Stragent* does apply because Mr. Hoarty does not rely on Dr. Malek's analysis to support the value of the identified sub-features, equal value among all sub-features, or exclusion of other aspects of Samsung's ACR system outside of the two servers. *Id.* at 4 (citing Dkt. No. 132-5 at 190:5–192:11, 192:24–194:18, 195:8–198:8).

In sur-reply, AMRH begins by reiterating its arguments regarding *Stragent*, *Eidos Display*, and *SB IP Holdings*, concluding that there is no rule requiring apportionment distinguishing key inventive aspects over the prior art. Dkt. No. 176 at 1–2. AMRH then argues that Samsung allocates costs between the two servers, so this is a proper starting point for Mr. Hoarty's analysis, and Samsung has not provided another way to allocate that includes all costs. *Id.* at 2–3 (first citing Dkt. No. 132-1 ¶¶ 51–54, 57–58; and then citing Dkt. No. 147-7). AMRH next argues that Samsung has not explained how sub-features could have been granulated further, and this is no basis for exclusion under *Correct Transmissions* and *Smart Path Connections*. *Id.* at 3. AMRH then concedes that Mr. Hoarty did not apportion by claim, but argues that this is not required. *Id.* at 3–4. AMRH continues that Mr. Hoarty only relied on Dr. Malek to identify which ACR features were infringing and then completed his own analysis on the value of those features. *Id.* at 4 (citing Dkt. 132-1 at ¶¶ 50, 54, 58). Lastly, AMRH reiterates

8

that Samsung's criticisms on Mr. Hoarty's "inputs and steps" are properly made on cross. *Id.* at 4–5.

Addressing each argument in turn, the Court begins by noting that the Supreme Court in *Daubert* clarified that "[g]eneral acceptance is not a necessary precondition" to admissibility. 509 U.S. at 597. Mr. Hoarty is not required to cite some authority providing for the general acceptance of his methodology, as Samsung contends. Second, although Mr. Hoarty's analysis begins with the costs of the two servers, which, when he counts features, takes account only of the server costs in lieu of total costs, thereby increasing the valuation, AMRH is correct that Samsung's spreadsheet allocates expenses in terms of those two servers. Dkt. No. 147-7. Moreover, in view of that spreadsheet, Samsung has not explained how Mr. Hoarty could otherwise have apportioned to total costs. Third, to Samsung's argument that Mr. Hoarty does not apportion out features included in the prior art, the Court has already addressed and rejected this argument in Section A. Fourth, the Court rejects Samsung's arguments that Mr. Hoarty should have done a claim-specific benefits analysis and weighed the features more appropriately to the benefits provided. The Court finds his methodology to be sufficiently reliable for the jury to make further determinations as to the weight and credibility of his testimony.

C. One-Valuation-Fits-All Approach

Samsung's final independent argument for striking the entire apportionment opinion is that Mr. Hoarty unreliably opines that his apportionment would remain unchanged if less than all of the patents are infringed. Dkt. No. 132 at 13–14. Specifically, Samsung argues that Mr. Hoarty's "one-valuation-for-all theory fails to account for the incremental value of the Asserted Patents," as required by *Omega* and *Cisco*, and, because of this failure, he "provides no basis to

9

conclude that the Asserted Patents' value is co-extensive, particularly given the differences in functionality covered by the claims . . . ." *Id.* at 14.

However, AMRH responds that Mr. Hoarty explained that he decided the value of the Asserted Patents was co-extensive because he found they had a "common core" of benefits, which his apportionment captured. Dkt. No. 147 at 14 (citing Dkt. No. 132-5 at 221:21–222:1). AMRH further responds that treating patents as co-extensive is not prohibited. *Id.* at 14–15. AMRH points out that Samsung's expert treated the asserted patents collectively as well. *Id.* at 15 (citing Dkt. No. 147-1 at 718–19).

The Court finds Samsung's arguments unpersuasive. Samsung's first argument, that Mr. Hoarty's apportionment does not account for the incremental value of the Asserted Patents, overlaps in part with arguments Samsung previously made concerning Mr. Hoarty's apportionment of the incremental value over the prior art, which this Court considered and rejected in Section A. Additionally, because Mr. Hoarty opines that the patents share a common core of benefits, the value may be co-extensive. Accordingly, the Court finds Mr. Hoarty's opinions to be sufficiently reliable at this juncture.

### D. Failure to Consider Samsung's Total ACR Costs

Samsung's argument here—and the AMRH's response—rehashes the argument under Section B regarding Mr. Hoarty's failure to begin his analysis from the total costs of Samsung's ACR system rather than the costs of the two servers. Dkt. No. 132 at 14–15; Dkt. No. 147 at 15. It is worth noting that Samsung does not continue to raise this as a separate ground in its Reply. Dkt. No. 167. Accordingly, the Court has already addressed and rejected this argument.

### III. CONCLUSION

For the preceding reasons, the Court **DENIES** Samsung's Motion to Exclude the Apportionment-Related Opinions of Mr. W. Leo Hoarty. Dkt. No. 132.

**SIGNED this 17th day of September, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE