IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ANONYMOUS MEDIA RESEARCH HOLDINGS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. *and* SAMSUNG ELECTRONICS CO., LTD.,<br><br>*Defendants*. | CASE NO. 2:23-CV-00439-JRG-RSP |

# MEMORANDUM ORDER

Before the Court is the Motion to Exclude the Opinions of Mr. Roy Weinstein filed by Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. **Dkt. No. 131**. In the Motion, Samsung asks the Court to exclude the opinions of Plaintiff's damages expert, Mr. Weinstein, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny. The Parties have fully briefed the Motion. Dkt Nos. 148, 168, 175. The Motion is **DENIED** for the following reasons.

## I.   APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a

trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting Fed. R. Evid. 702 advisory committee note)). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II. ANALYSIS

Samsung argues that the Court should exclude Mr. Weinstein's opinions for several reasons. The Court addresses each in turn.

### A. Flat-Rate Royalty

First, Samsung argues that Mr. Weinstein's royalty-rate opinion should be excluded because it "violates black-letter law." Dkt. No. 131 at 2. Samsung represents that Mr. Weinstein opines "that the royalty rate is the same regardless of the number of patents or claims infringed." *Id.* Samsung argues that this sort of analysis "runs afoul of Federal Circuit precedent" because it does not account for apportionment. *Id.* The cornerstone of Samsung's argument is the Federal Circuit's *Omega Patents LLC v. CalAmp Corp.* decision, which "fail[ed] to see how [a] patent/claim-independent approach accounts for apportionment" "absent evidence of a comparable license or comparable negotiation" to support it. 13 F.4th 1361, 1379 (Fed. Cir. 2021).

3

As Plaintiff points out, however, *Omega* is inapposite. While that decision does make much of the plaintiff's failure to account for apportionment, that was primarily because it "failed to adequately account for substantial 'distinguishing facts' between the proffered licenses and a hypothetical negotiation over the patent at issue in that case." *Id.* at 1380. Here, by contrast, both parties' experts agree that a certain RealityMine agreement is comparable and represents built-in apportionment. Dkt. No. 148 at 2 & nn. 2–4. So, though Samsung emphasizes that Mr. Weinstein "relie[d] on the same kinds of evidence" that *Omega* found insufficient, Dkt. No. 131 at 4, it has tacitly conceded through its own expert's opinion that there is "real-world confirmation" that a "comparable license rate does not vacillate based on the number of patents or claims in use," Dkt. No. 148 at 3—even if it does not address Mr. Kidder's testimony to that effect in its briefing. Of course, the question of what to do with this comparable license remains for the jury, but the mere fact of having such a license distinguishes *Omega* and forecloses Samsung's primary argument for excluding Mr. Weinstein's opinion.[1]

## B. ROIC-Based Analysis

Second, Samsung complains that Mr. Weinstein's use of a return-on-invested-capital ("ROIC")-based approach does not sufficiently tie his testimony to the facts of the case. Dkt. No. 131 at 6. Samsung identifies that in several of his damage calculations, Mr. Weinstein implements an ROIC-based approach "to allocate the percentage of Samsung's incremental profit that would be given to either party as part of a hypothetical negotiation." *Id.* But, it

---

[1] For this reason, the Court need not address Samsung's argument that the other "self-serving" testimony upon which Mr. Weinstein relies would have been sufficient to sustain his opinion. Dkt. No. 131 at 4 (citing *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1344 (Fed. Cir. 2025)).

4

contends, it "is facially absurd" to conclude that "Samsung would accept a profit split allocating [only] 16.6% of all incremental profit attributable to the Asserted Patents" to itself. *Id.*

AMRH responds in two parts. It primarily argues that ROIC "is a standard measure of a company's profitability and return on capital." Dkt. No. 148 at 6. Not only so, the "16.6% figure is Samsung's actual ROIC from Samsung's financial records at the time of the hypothetical negotiation." *Id.* at 7. Because of this, Samsung "would recognize its 16.6% return on invested capital to be a reasonable benchmark for evaluating the licensing" at issue here, and thus it is proper to allow Mr. Weinstein to rely on it. *Id.* "In any case," AMRH argues as a backup, "Samsung's criticisms of such a split is an issue that goes to the weight of the evidence, not a methodological flaw." *Id.* at 6.

The Court agrees with AMRH: using ROIC is not sufficiently unreliable so as to warrant exclusion. *See Nanoco Techs. Ltd. v. Samsung Elecs. Co.*, No. 2:20-CV-00038-JRG, 2022 WL 10986185 (E.D. Tex. Sept. 21, 2022) (admitting Mr. Weinstein's ROIC analysis). Of course, Samsung is free to cross-examine Mr. Weinstein about the purported factual distinctions Samsung identifies between the real world and his analysis, but those distinctions go to weight, not admissibility.

### C. Cost-Based Analysis

Next, Samsung argues that several of Mr. Weinstein's theories should be excluded because they "treat 'ACR costs as a proxy for value.'" Dkt. No. 131 at 9. Such analysis "is fundamentally flawed because it reflects no effort to determine the incremental value, or incremental costs, of the Asserted Patents." *Id.*

5

Not so, says AMRH: "Using cost as a proxy for the value of a patented feature as a starting point to measure damages is a well-established approach." Dkt. No. 148 at 8 (citing *Summit 6 LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296–98 (Fed. Cir. 2015)). AMRH points out that, like *Summit 6*, Mr. Weinstein does endeavor to "determine the incremental value, or incremental costs, of the Asserted Patents," Dkt. No. 131 at 9, by "appl[ying] an additional apportionment percentage . . . and finally appl[ying] a bargaining split to determine a reasonable royalty." Dkt. No. 175 at 3 (citing *Summit 6*, 802 F.3d at 1297).

As with the ROIC analysis, Samsung has not carried its burden of showing that Mr. Weinstein's analysis is not sufficiently reliable to be presented to the jury. While it may take issue with the way he arrived at his conclusions, it may cross-examine him on those methods. The Court, however, does not agree that cross-examination would be insufficient for this aspect of his analysis.

### D. Apportionment Values

Fourth, Samsung criticizes Mr. Weinstein's apportionment values and the methods by which he arrived at them. Dkt. No. 131 at 10. This dispute concerns a certain "Revenue Breakdown Document" and Mr. Weinstein's interpretation thereof. *Id.* at 11. In several pages of briefing, Samsung asserts that Mr. Weinstein misinterpreted the document, misattributed it, and misapplied it. *Id.* at 11–14. In response, AMRH defends Mr. Weinstein's analysis by arguing that he accounts for some of Samsung's critiques, Dkt. No. 148 at 10, and that others are rooted in factual disputes, *id.* at 11–13. On this point, it appears that AMRH is correct. Nowhere does Samsung identify any analysis that must be excluded as unreliable, so it has not carried its burden on this objection either.

### E. Supply Side Platform Revenue

Penultimately, Samsung criticizes Mr. Weinstein's calculations for improperly including certain revenue figures. Dkt. No. 131 at 14–15. AMRH, however, maintains that "[Mr.] Weinstein excludes all revenue Samsung identified as attributable to Open Exchange sales," which comprises the figures Samsung complains of. *Id.* at 14; Dkt. No. 175 at 5. At bottom, this dispute is not one concerning the reliability of Mr. Weinstein's methodology—rather, it is one concerning what should and should not have been analyzed as inputs for that methodology. Thus, Samsung fails to carry its burden here as well.

### F. Hoarty

Finally, Samsung argues that Mr. Weinstein's opinions relying on Mr. Hoarty's "conclusion that 40.3% of Samsung's ACR system's value is attributable to the Asserted Patents" should be excluded for the reasons provided in Samsung's separate Motion to Exclude the Apportionment-Related Opinions of W. Leo Hoarty, Dkt. No. 132. Dkt. No. 131 at 15. However, the Court rejected Samsung's arguments in that separate Motion and denied it. Accordingly, the Court will not exclude Mr. Weinstein's opinions relying on Mr. Hoarty's 40.3% apportionment value.

### III. CONCLUSION

Accordingly, the Court **DENIES** Samsung's Motion to Exclude the Opinions of Mr. Roy Weinstein. **Dkt. No. 131**.

SIGNED this 17th day of September, 2025.

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE